## H. R. MACFARLANE *vs.* SCHOONER JENNIE WALKER.

### IN ADMIRALTY.    BEFORE JUDD, C.J.

### MAY, 1883.

A collision at night between two schooners, one running before the wind, and the other close-hauled on the port tack, held to have been caused by lack of proper lookout on the former vessel, and absence of lights on the latter: and damages divided.

### DECISION OF JUDD, C.J.

The libellant was the owner of a Hawaiian schooner of 42 tons burden, named the Kaala, and claims $6000 damages for her loss by collision with the schooner Jennie Walker, which it is claimed was occasioned by her culpable negligence and carelessness.

It is proved, in my opinion, that on the night of the 10th of May, at about 12:45 A.M., the Jennie Walker, a Hawaiian schooner of 138 tons burthen, was coming down from Hawaii with a cargo of sugar, deeply laden, and running down the Oahu channel before a strong trade wind with her sails "wing and wing," bound for Honolulu. When off Koko Head she collided with the Kaala which was standing off shore on the port tack, close-hauled, bound for Heeia, Koolau, on the windward side of this island. Just before the collision the Jennie Walker's helm was put to starboard, and this made her sheer off a little, and her jib-boom went through the Kaala's jib. The shock of the collision was sufficient to rouse those who were in the Jennie Walker's cabin, and the vessels became fouled, and the sea being rough, the Jennie Walker's anchor tore down the Kaala's bow and she went down bow-foremost and sank in very deep water. The Jennie Walker's sails were lowered soon after the collision and before the Kaala sunk. Her officers and crew clambered over into the Jennie Walker and were all saved. There was no moon that night, but the stars were visible and sky clear except when occasional rain squalls from the land obscured them.

Thus far there are no contradictions. The libellant introduced Captain George Townsend, the master of the Kaala, the mate Jacob Kaia, the lookout John Kawai, and Daniel Keliikapu a sailor, who all swear that the Kaala was provided with lights as required by the Statute of 1880 (entitled An Act for Preventing Collisions at Sea) to wit, a red light in the main rigging on the port side and a green light on the starboard side, rigged the same way, about six feet above the rail; that both these lights were lit at sunset and were burning brightly at the time of falling in with the Jennie Walker; that the lookout was stationed in the boat midships and saw the Jennie Walker coming down on them, some say fifteen minutes before the collision, some say the vessels were the width of the Court House apart. On the other hand Captain Henry Neisen, of the Jennie Walker, Tetaua, the sailor who was steering, and Frank

Mice, the lookout who was on deck at the time, as well as Mr. Feuth, first mate, John Naulo, steward, Andrew Erickson, Carl Ohlsen, John Dower, Thorwald Tolkilsen, passengers, and Bill Rotumah and Taio, of her crew, say they saw no lights on the Kaala. The crew of the Kaala, however, say that the port light of the Kaala were swept off by the foreboom of the Jennie Walker, the blow carrying away the main-rigging, and if this is true, those on the Jennie Walker who came on deck after the collision or who were aroused from sleep by the shock of the collision (that is, all but the captain, the steersman, and the lookout) were not in position to say whether the port light may not have been burning at the moment of collision.

I know it often occurs that the feelings of seamen become strongly enlisted in favor of their respective vessels, which colors their testimony, but in this case the contradictions are flat and irreconcilable. That same night, however, the Kaala was passed by the schooners Moi and Waioli. Two of the Moi's crew testify that they passed near enough to recognize the Kaala, and she had no lights, and Kaikaai, the second mate of the Waioli, says that when they passed the Kaala there were no lights on her. I think the preponderance of testimony is in favor of the proposition that the Kaala's lights were not burning at the time of the collision, which is a breach of the Act of 1880 referred to.

But it is proven by the testimony and not denied by the respondent, that the lookout of the Jennie Walker was stationed on the house aft of the mainmast, and but a few feet ahead of the man at the wheel. The captain says that the lookout and the helmsman called out together, "a sail on the starboard bow." The captain says the mainsail was on the starboard side guyed out; this is also supported by the lookout and many others, though others say the mainboom was on the port side. I think the captain and lookout are more likely to be correct in this respect. Now, if the lookout was stationed aft of the mainmast and on the port side, as he says he was, his view forward would be obstructed by the mainsail which was at right angles with

the vessel.  The captain says the vessel was taking in water over each side, and that it was wet forward, as the reason why the lookout was placed as he was.  But this is no excuse.  He was not in a proper place.

Says Clifford, J., in the case of *The Ottowa*, 3 Wallace, 273, "Lookouts must be persons of suitable experience, properly stationed on the vessel, and actually and vigilantly employed in the performance of this duty.  Proper lookouts are competent persons other than the master and helmsman, properly stationed for that purpose on the forward part of the vessel.  Lookouts stationed in position where the view forward, or on the side to which they are assigned, is obstructed, either by the lights; sails, rigging, or spars of the vessel, do not constitute a compliance with the requirements of the law," etc.

There are abundant authorities to this effect.  *The Genesee Chief vs. Fitzhugh*, 12 How., 443; *The Northern Indiana*, 3, Blatch., 105, are cases in point.

It was by article 14A of the Act of 1880, encumbent upon the Jennie Walker, being a vessel "running free," to keep out of the way of the Kaala, she being close-hauled; and it is quite possible to believe that even if the Kaala had no lights, the Jennie Walker might have avoided the collision if she had had a proper lookout who would have seen the Kaala in time to avoid her.  The neglect of the Kaala in not displaying proper lights did not absolve the Jennie Walker from observing on her part the laws of navigation and all reasonable and practicable precautions.  *The Grey Eagle*, 9 Wallace, 505.

Having thus found that both vessels were in fault, I hold, according to the current of modern decisions, that the amount of damage sustained by the owner of the Kaala for her loss, and the damage to the Jennie Walker resulting from the collision, must be divided between the parties.  Costs in the same way.

The matter is referred to S. B. Dole, Esq., a Master in Chancery, to assess the damages and report to the Court.

Since this judgment was delivered I have been shown a recent case decided by the Judicial Committee of the Privy Council

of Great Britain, May, 1882, *The Hochung* and *The Lapwing,* where this eminent Court held "where two vessels are damaged by collision, for which both are to blame, one for wrongful navigation and the other for a breach of the regulations for preventing collisions at sea, it not being shown that such breach could not possibly have contributed to the collision, the damages are to be divided between the parties according to the Admiralty rule—which is, that each party shall obtain from the other half of the damage which he has suffered."

It would be difficult to find a case resembling more closely in every respect the one at bar.

*F. M. Hatch,* for libellant.

*E. Preston & W. R. Castle,* for respondent.

Honolulu, May 22d, 1883.

